Scileppi, J.
Defendants Colon, Lo Ciceros and Morelli appeal from separate judgments of the Appellate Division, affirming judgments convicting them, after a jury trial, of criminally buying and receiving stolen property and of criminally concealing and withholding stolen property as felonies. As to the fifth named defendant, Carol Bice, the People, appeal from a separate order reversing a judgment of conviction on the same charge and dismissing the indictment.
On August 16,1966, Bichard Lo Cicero, a runner for the brokerage firm of Paine, Webber, Jackson and Curtis (hereinafter Paine-Webber), left his employer’s place of business with various stocks and bonds, valued in the aggregate at some $370,000, for delivery in the normal course of his duties to four other brokerage firms and the Grace National Bank, all located in the immediate Wall Street area. As the record indicates the five firms to which the securities were to be delivered never received them, nor were the securities or the receipts therefor returned to Paine-Webber. Curiously, Lo Cicero failed to return to work that day and on the following day, August 17, a flyer, listing the quantity, description, and serial numbers of the stocks and bonds which had disappeared, was circulated among banks and brokerage houses in the financial district.
Prior to September 16, 1966, Detectives Hans Johanson, a bond expert, and Peter Starace were assigned to investigate the loss of the securities. On September 16, at about 10:00 p.m., Starace met with defendants Colon and Masciana (now deceased) for the first time to discuss the purchase of certain securities. According to his testimony, Detective Starace posed as a prospective purchaser and requested that he be supplied with a sample of the securities for his bond expert’s appraisal. The defendants cautiously refused the request and suggested an appointment for the following day, at which time the * ‘ bond man ” could examine the securities himself.
Pursuant to that agreement, Starace, accompanied by Johanson, met with Colon and Masciana. Starace introduced Johanson as his bond expert, whereupon the defendants suggested a price of $125,000. Johanson, intent upon playing out his role, hesi *7 tated and insisted on examining the bonds before considering any offer. Acceding to this request, Masciana left the group to schedule an appointment. While he was gone Colon assured the investigating detectives that he had already seen the bonds and they were ‘ ‘ treasuries ’ ’ which had been stolen from a messenger on Wall Street about a month before. When Masciana returned, an appointment was made for 9:30 a.m. on September 20, at which time the securities would be available for inspection.
On Tuesday, September 20, Detectives Johanson and Starace again met with the above defendants, who, in turn, were subsequently joined by defendants Morelli and Charles Lo Cicero. Pursuant to planned arrangement, defendant Morelli drove Johanson, via an obviously circuitous route, to an apartment located at 725 Fourth Avenue in Brooklyn. Upon gaining entry to the apartment by way of an unlocked door, Morelli produced a cardboard box containing bundles of securities. Johanson then took the flyer listing the reportedly missing securities from his pocket and with Morelli’s assistance examined the securities to determine if they were genuine. With the aid of that paper, Johanson later testified that the securities corresponded by issue and serial number with the securities listed on the flyer as reportedly missing. Having completed his examination Johanson then explained that since the securities were “ municipals ” rather than “ treasuries,” they did not have the resale value of Government bonds and consequently the original demand of $125,000 would have to be reduced to $100,000. After some discussion, Morelli stated that the offer was subject to the approval of Colon, who was to get everything above $95,000. Accordingly, Morelli retired to the bedroom where he made a telephone call.
Shortly thereafter, about 11:15 a.m., Colon arrived. Johanson explained to Colon that since the securities were not Federal securities but merely municipal and State bonds the price had to be reduced to $100,000. After some additional discussion, Colon agreed to the reduced price of $100,000. Morelli then agreed to escort Johanson to a barber shop at Douglas and Smith Streets where the proposed exchange would take place. Johanson made a telephone call from the apartment to a prearranged pay station in the Long Island Railroad Depot for the purported *8 purpose of arranging to have the money delivered to the barber shop. Colon departed and was followed shortly by Morelli, who left Johanson behind in the apartment with the box of securities. In the meanwhile Colon and Masciana were arrested.
After the arrests, Detective Starace telephoned Johanson at the apartment and informed him that Colon and Masciana had been arrested. Johanson then attempted to leave with the box of securities, but on reaching the street floor of the premises he was met by five or six men, including the two Lo Ciceros, Charles and Carlo, and Anthony Morelli, whereupon he was relieved of the box. Johanson was then driven to the barber shop, where Carlo Lo Cicero was arrested. Shortly thereafter, Johanson and Detective Starace arrested Morelli in a local bar. Charles Lo Cicero was the last defendant to be arrested on October 12, 1966.
Of the plethora of questions raised on this appeal, some refer, in part, to the nature and quantum of proof required to support a conviction under section 1308 of the former Penal Law; others relate to alleged infringements of certain constitutional rights. As our abbreviated statement of the facts would indicate, our present concern relates primarily to the questions raised regard-' ing the nature of the statutory offense. Accordingly, we have chosen to treat with only those specific issues, omitting reference to all others in our opinion.
Defendants collectively argue that the prosecution failed to prove beyond a reasonable doubt that the property had been previously stolen or wrongfully acquired by another. The question of law, therefore, relates to the quantum of proof necessary to support a conviction of the crime of criminally buying, receiving, concealing and withholding stolen property pursuant to section 1308 of the former Penal Law. As defendants note in their brief, to sustain a conviction under this section, it is essential that there be three concurring facts: (1) The property must have been stolen by someone; (2) it must have been bought, received, concealed or withheld by a certain person, and (3) such person must have known that the property was stolen (People v. Walker, 198 N. Y. 329). Each and every element, however, of the crime may be established by either direct or circumstantial evidence (People v. Berger, 285 N. Y. 811; People v. Nazar, 305 N. Y. 751). In the present case, the *9 prosecution concededly lacked any direct evidence that the securities in question were in fact stolen, and proceeded upon circumstantial evidence. The prosecution sought to prove the theft by establishing two factors: (1) That the brokerage house which had custody of the securities entrusted them to its messenger with instructions to deliver the same to specified banks and brokerage houses, and (2) that the proposed recipients never received the securities. Again, as to the circumstances under which they left the possession of the messenger, the record is devoid of any evidence, either direct or circumstantial. We simply have established by all relevant testimony the fact of nondelivery and nothing more. Assuming the truth of the nondelivery, the question is whether there was enough evidence, as a matter of law, to warrant a jury finding beyond a reasonable doubt that the securities were stolen in the first instance. Defendants argue there was not. We disagree.
True, there is no direct evidence of the theft. However, the circumstances are clearly such as to provide an adequate basis for the inference that there was such a theft, whether it had been committed by the messenger himself, one or all of the codefendants herein, or by some third party whose possible existence simply deepens the mystery of their disappearance. Surely $370,000 worth of securities do not by their own resources work their way into the possession of six individuals in Kings County. Of course, the proof is not beyond any doubt at all, and it is entirely conceivable that there is some other explanation for the disappearance; but no other such explanation is suggested here. While we do not suggest that the defendants are under an obligation to come forward and exculpate themselves, it should be recognized that the jury could reasonably infer from the circumstances surrounding the unexplained disappearance that the securities were in fact stolen. Two cases decided by this court would seem to support this conclusion.
In People v. Berger (285 N. Y. 811, supra) a quantity of rubber thread contained in a large wooden packing box mysteriously disappeared. The box, with others, was on a truck for delivery, but in the course of its route about a city, was noted missing by the truck driver. After the loss had been reported to the police, a policeman found the defendant unpacking this same box on a sidewalk about two miles from where the box had been reported *10 missing. Defendant told the policeman that he was looking around for a packing case and had found this one on the sidewalk, an unlikely story inasmuch as the secured tailboard would prevent against its slipping out. It was claimed, among other things, on appeal to this court that there was insufficient evidence that the property had been stolen by anyone, that is, the same claim argued on the present appeal. We held that this was properly a question of fact for the jury and although there was no direct evidence of an underlying theft, the circumstances were such as to make such an inference possible (People v. Berger, 285 N. Y. 811, supra).
Similarly, in People v. Nazar (305 N. Y. 751) the People sought to establish by circumstantial evidence the commission of the underlying theft as a predicate for a violation of section 1308. Again there was no direct proof of the underlying theft. Following Berger, we held that the question of the underlying larceny was properly one for the jury and affirmed the conviction.
Additionally, the independent statements of defendants Morelli and Colon that the certificates were ‘ ‘ taken ’ ’ from a Wall Street messenger, when considered in light of additional, although circumstantial, proof that the theft had been committed (see People v. Cuozzo, 292 N. Y. 85, 92), are sufficient under section 395 of the Code of Criminal Procedure to warrant a conviction for the underlying theft (Code Crim. Pro., § 395; see, also, People v. Jaehne, 103 N. Y. 182,199). The requirement of additional proof is satisfied by the testimony of various witnesses tending to show that the securities entrusted to the messenger were never delivered to the designated recipients or returned to Paine-Webber and by the inference of guilt arising from the defendants’ recent, exclusive and unexplained possession of the securities (see People v. Cuozzo, supra, at p. 92; People v. Jaehne, supra, at p. 199). Clearly, if the defendants Morelli and Colon could be convicted under section 395 of the underlying theft on the basis of these admissions, the admissions, when supported by additional evidence of the commission of the crime, could equally serve as a basis for establishing the theft as an element of the crime.
Defendants further contend that it was error for the trial court to instruct the jury that it could consider a violation of *11 section 1300 of the former Penal Law[1] as the underlying larceny upon which the charge of receiving or possessing stolen property was predicated. That contention is founded upon the ground that the prosecution is alleged to have failed to offer evidence seeking to establish that particular species of larceny. Indeed, it is argued that the matter was first raised in the prosecutor’s summation, wherein he noted that the jury could find that the property was lost and wrongfully acquired by an unknown finder. The record, however, as defendants readily concede, belies this very contention. It is to be noted that the court, over objections, allowed the People to refer to the section 1300 violation only after the question of lost property was first alluded to by counsel for the defense in his summation. Surely, where the defense chooses to interject the possibility that the property could in fact have been lost, the prosecution may properly comment on that possibility and inform the jury that the appropriation of lost property may, in certain instances, of itself constitute the underlying larceny upon which the crime of receipt is predicated. As that issue was introduced into the case, it was certainly proper for the court to instruct the jury that it could find a violation of section 1300 as the predicate of the underlying felony.
Assuming that the court properly charged the jury as to the availability of section 1300 as the predicate of the underlying felony, it is urged, nevertheless, that there was insufficient evidence from which the jury could properly find that the larceny arose under section 1300. As to this contention, suffice it to say that from the facts as adduced at trial the jury could properly find on the basis of the circumstantial evidence presented that the larceny arose under section 1300. Defendants’ listing of the four elements of the offense, to which they find a lack of evidence, is surely rebutted by the facts as presented in the record and the inferences which could reasonably be drawn therefrom.
Defendants further argue that under an indictment pursuant to section 1308 it is incumbent upon the prosecution to establish *12 beyond a reasonable doubt that the property was not stolen by the accused (People v. Funkhouser, 23 A D 2d 955). Indeed, they would have us hold that the property must be shown to have been either stolen by a person other than the defendants or acquired by a person other than defendants in manner constituting a larceny as defined in article 122 of the former Penal Law. A reading of the relevant statutory provisions establishes no such requirement, nor has our research disclosed any authority for the proposition beyond that cited above by the defendants in support of their position.
Preliminarily, it should be noted that section 1308, as structured, gave rise to innumerable problems of construction, not the least of which related to instances wherein the receiver or withholder was also implicated in the theft of the stolen property. It is clear that while one could properly be indicted for both larceny and the crime of receiving stolen property, an active participant in the larceny could not be convicted of “receiving” property which he himself had stolen (People v. Daghita, 301 N. Y. 223, mot. for rearg. den. 301 N. Y. 744). The crimes are, for purposes of conviction, therefore, held to be mutually exclusive and defendants would have us infer that before one can be convicted on a charge of receiving stolen property, it is essential that there be some evidence tending to show that defendant was not the thief. This, however, is not the law.
It is the law that the recent and exclusive possession of the fruits of a crime, if unexplained or falsely explained, will justify the inference that the possessor is a criminal. That statement of the law, so well expressed by Judge Cabdozo in People v. Galbo (218 N. Y. 283, 290), has been applied most frequently in cases involving burglary (Knickerbocker v. People, 43 N. Y. 177) and larceny (Stover v. People, 56 N. Y. 315) and receiving stolen goods (Goldstein v. People, 82 N. Y. 231). However, as Judge Cabdozo so cautiously noted, “ Only half of the problem * * * has been solved when guilty possession fixes the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief or is he a receiver of stolen goods ” {id., at p. 290). The question is a hard one and to resolve it we must steadily bear in mind that the inference *13 of guilt to be drawn from possession is never one of law (id., at p. 291). Indeed, the standard is necessarily a fluid one and we must consider all the circumstances of a given case before finally opting for one result or another.
As we noted in People v. Daghita (supra, at p. 228) a defendant may, of course, be indicted for both the crime of larceny and the crime of concealing and withholding. It is, however, properly for the jury to determine whether the defendant is guilty, as a thief, of the larceny or, as a nonthief, of concealing and withholding (id). This reasoning, it may be suggested, tends to beg the question, as it relates to the inference to be drawn from facts establishing the defendant’s recent, conscious, exclusive and unexplained possession of the fruits of a crime. To the contrary, the very fact that the defendant may, depending upon the circumstances of the case, be convicted of either the underlying larceny or of “ receiving ’ ’ demonstrates, implicitly at least, that the prosecution need not establish beyond a reasonable doubt that someone other than the present defendants committed the theft (see Goldstein v. People, supra; People v. Berger, supra; People v. Galbo, supra; People v. Daghita, supra; People v. Everett, 10 N Y 2d 500; People v. Moro, 23 N Y 2d 496). The law, it seems, points to the contrary and where the prosecutor introduces evidence tending to establish (1) that the articles were stolen; (2) that they were in the possession of the defendant, and (3) that the defendant knew that the property had been stolen, he has made out a prima facie case and the question of defendant’s culpability is properly for the jury to decide (People v. Walker, 198 N. Y. 329, 333; People v. Berger, supra). Should it be established that the defendant is in fact guilty of the principal offense, an indictment charging receipt would properly be dismissed (People v. Daghita, supra). This is indeed a far cry from holding that the prosecution, as part of its case, must establish that someone other than the possessor committed the theft.
What we have therefore, is simply this: The recent and exclusive possession of the fruits of a crime, if unexplained (as surely is the present case) or falsely explained, will justify the inference that the possessor is a criminal. Whether the defendant is to be convicted as a thief or as a receiver, under an indictment charging both, is a question of fact for the jury *14 to determine. Where, however, he is charged only as a receiver and the evidence adduced at trial establishes his guilt as a thief, the indictment charging the former offense should be dismissed. Since there was evidence that the property was stolen, that, from the circumstances in the case, it might properly be inferred that the defendants had knowledge that the goods were stolen and that they received them from the thief and the evidence showed that they were in actual possession of the stolen goods, it was proper for the court to submit to the jury the question of the defendants’ guilt upon the charge of having received stolen property. If there was evidence upon which the jury might find either the defendants had stolen the property or that they had received it from the thief, the question as to which offense the defendant was guilty of was a question of fact for the jury to determine (People v. Berger, supra; People v. Galbo, supra). Accordingly , the question of whether the defendant is guilty of the theft is relevant, not as part of the People’s case, but to the ultimate question of his guilt on the crime charged. Here, the jury convicted the defendants of receiving stolen property and in so doing must be presumed to have considered and rejected the possibility of their involvement in the underlying theft, for as we noted in Baghita “ a thief may not be convicted under section 1308 of the Penal Law of ‘ buying ’ or [1] receiving ’ the very goods he himself had previously stolen ” (People v. Baghita, supra, at p. 225). Strictly speaking, therefore, that a person other than the named defendant is guilty of the underlying theft is not an element of the prosecution’s case but rather presents a preliminary question of fact for the jury’s determination. To hold otherwise and require more would be to resurrect the philosopher’s donkey who starved to death because he could not choose between two utterly equal and delectable bales of hay.[2]
Finally, defendant Colon argues that the People’s proof “ in support of Count One was insufficient as a matter of law on the *15 issue of venue ” and in support thereof relies on People v. Spivak (237 N. Y. 460). In that ease the defendant was convicted in the Court of General Sessions of the County of New York of receiving stolen property in New York and was acquitted on a second count contained in the indictment charging him with larceny. The evidence adduced showed the automobile in question to have been stolen in New York County and sold several days later by t^e defendant to a garage in Kings County. This court affirmed, holding that there was no proof of possession by the defendant in New York County, especially since he had been acquitted of the larceny alleged to have been committed in New York: “ We know that the defendant had possession in the county of the sale. If participation in the larceny be excluded, we have no reason to believe that he had possession anywhere else.” (Id, at p. 462.)
It is indeed true that the form of section 1308 of the former Penal Law, structured as it was to provide for two distinct crimes, gave rise to some curious problems, not the least of which related to vexing jurisdictional questions in cases where the receiving occurred in one jurisdiction and the property was then taken to and “ concealed ” or “ withheld ” in another. Cases such as People v. Barsh (281 App. Div. 1042, app. dsmd. 306 N. Y. 650) and People v. McClean (243 App. Div. 578) typify these problems. In the instant case, however, there was no proof of possession or receipt by defendants in New York County. The defendants were found in possession of the securities and attempted to sell the same in Kings County. Thus, unlike cases such as Barsh (supra) and McClean (supra) there was no evidence that defendants actually received the stolen property in another county (see, also, People v. Zimmer, 174 App. Div. 470, affd. 220 N. Y. 597) and unlike Spivak (supra) the defendants were not tried in a county other than the one within which they were found in possession. Spivak simply stands for the proposition, asserted and reasserted by this court, that receiving is a local offense and must be tried in the county where the receipt took place (People v. Fein, 292 N. Y. 10; People v. Zimmer, supra). In Wills v. People (3 Parker Cr. Rep. 473) the attempted sale of stolen goods by sample from a pawnshop was held to justify an inference that criminal receipt took place in the county of the attempted sale. That case is *16 dispositive here (see, also, People v. Wieczorek, 11 A D 2d 898). That the property was found in defendant’s possession in Kings County, would justify the inference that the receipt took place in that county. Spivak in no way contradicts that elementary proposition.
We have considered each and every other argument raised by the defendants Colon, Lo Ciceros and Morelli and find them to be equally without merit.
Accordingly, the judgments of the Appellate Division affirming the judgments of conviction and the order of the Appellate Division reversing the judgment of conviction and dismissing the indictment as to Carol Rice are affirmed.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.
Judgments and order affirmed.

. “ § 1300. Appropriating lost property. A person, who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person who is not entitled thereto, without having first made every reasonable effort to find the owner and restore the property to him, is guilty of larceny.”

. These and other difficulties are eliminated by section 165.60 of the revised Penal Law which provides:
“ In any prosecution for criminal possession of stolen property, it is no defense that: * * * 2. The defendant stole or participated in the larceny of the property; provided that a person may not be convicted of both larceny and criminal possession of stolen property with respect to the same property-”.