**Vernon Percy HOWARD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1210.**

Supreme Court of Alaska.

Nov. 30, 1971.

Herbert D. Soll, Public Defender, R. Collin Middleton, Meredith A. Wagstaff, Asst. Public Defenders, Anchorage, for appellant.

John Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Dist. Atty., Charles M. Merriner, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

RABINOWITZ, Justice.

After trial by jury Vernon Percy Howard was found guilty of receiving and concealing stolen property in violation of AS 11.20.350. Thereafter a judgment and commitment was entered under which Howard was sentenced to three years' imprisonment.

On June 3, 1969, approximately 26 leather coats were stolen from the premises of Leather Imports, Inc., in Anchorage. Howard was convicted of receiving and concealing 12 of these coats. The prosecution's chief witness, Tom Mingione, admitted participating in the burglary of the premises of Leather Imports, Inc., and the larceny of the coats. Mingione further admitted to three prior felony convictions, and to the fact that in order to better his lot he agreed to cooperate with the Anchorage City Police. Mingione told the police that he and two accomplices had sold the coats to Howard for $700. Pursuant to a plan worked out with police officials, Mingione agreed to repurchase the coats for the Anchorage City Police Department. In order to carry out this objective, Mingione was given $325 in bills, the serial numbers of which were recorded.

Mingione testified that he gave Howard $325 and received the coats in exchange. Officer George Weaver testified that he had the Howard residence under surveillance at the time this transaction took place, and that he arrested Howard shortly after Mingione departed from Howard's residence with a suitcase and a bag. Officer Weaver searched Howard contemporaneously to the arrest and recovered the $325 which had been furnished to Mingione by the police. The coats which were recovered from the suitcase and bag were subsequently identified as some of the coats which were taken in the Leather Imports burglary.

Testifying in his own defense, Howard admitted that he had given Mingione the suitcase and bag, but denied any knowledge of the contents of the suitcase or bag. According to Howard, Mingione had left the suitcase and bag at his residence for storage. Howard stated that he knew Mingione and in the past had loaned him small sums. In this regard Howard said that in October of 1967 he lent Mingione $400 to purchase a truck. Howard further testified that Mingione gave him $325 when he picked up his belongings, telling him that it was for partial payment of the loan he had received to purchase the truck.

In his first specification of error Howard contends that the trial court erroneously refused to give the following instruction:

> The court instructs the jury that the recent possession of stolen property alone is not evidence of knowledge that the property was stolen.

In light of our study of the record in this case, we conclude that no error was committed by the trial court by virtue of its refusal to give this requested instruction. In its charge the superior court informed the jury that Alaska's statute making it a crime to receive and conceal stolen property requires that the person must receive and conceal the property "knowing it to have been taken * * * or stolen." In defining the essential elements of the crime, the trial court further instructed in part that the prosecution was required to prove beyond a reasonable doubt

> that on or about the time and place alleged in the indictment, the defendant, Vernon Percy Howard, did unlawfully and feloniously, buy, receive or conceal property which had been stolen;
>
> *      *      *      *      *      *
>
> * * * that defendant knew at the time that such property had been stolen.

Finally, in defining the term "conceal" the court in part stated that

> [i]f you find that he was in possession of the property, and knew he was in possession of it, and knew that the property was stolen, and that he had no intent to return it to the owner, this was concealing the property within the meaning of the statute.

■ From the foregoing portions of the court's charge, it is clear that the prosecution had the burden of proving guilty knowledge on Howard's part. More particularly, the state had to prove beyond a reasonable doubt that at the time Howard received and concealed the coats in ques-

tion he knew these items had been stolen. In the evidentiary context of this case, proof of Howard's knowledge of the stolen character of the coats did not turn upon his recent possession of stolen property. Basically, if the jury believed Mingione, there was ample evidence, other than recent possession of stolen goods, to show Howard's guilty knowledge. In this context, we hold that it was not error to refuse Howard's requested instruction.

In his second specification of error Howard asserts that the trial court erred in failing to grant a mistrial sua sponte and in failing to grant appellant's motion for a new trial. These alleged errors are based on the prosecuting attorney's cross-examination of Howard "concerning improper acts constituting evidence of other crimes" of which Howard had not been convicted and on the prosecutor's references in final argument to this same subject matter. We hold that the prosecutor's conduct in the case at bar did not deprive Howard of a fair trial.

■ Howard testified in his own defense. In the course of the direct examination of Howard, his counsel, by way of anticipation, brought out the fact that Howard gambles and was cohabiting with a woman who was not his wife. In cross-examining Howard, the prosecuting attorney questioned Howard about his gambling and cohabitation. Counsel for Howard objected to this line of questioning, but did not lodge any objection to the prosecutor's questions of Howard regarding a scheme

on Howard's part to deceive the Internal Revenue.[1] Civil Rule 43(g) (7) which is made applicable to criminal prosecutions by Criminal Rule 26(a) provides that:

An adverse party may cross examine a witness as to any matter stated in the direct examination or connected therewith, and in so doing may interrogate the witness by leading questions.

Here the matters that were inquired into on cross-examination by counsel for the government were related to and connected with matters Howard had testified to during his direct examination, and were thus authorized under Civil Rule 43(g) (7). Although we find some of the phraseology employed by the prosecutor less than artful, we cannot find that his cross-examination of Howard worked a substantial interference on the accused's right to a fair trial.[2]

■ We reach a similar conclusion regarding Howard's assertion that he is entitled to a new trial on the basis of the prosecutor's remarks made during final argument concerning Howard's gambling, cohabitation, and deception of the Internal Revenue Service. We think the prosecutor's comments were limited to reasonable inferences from the record, and therefore do not provide the basis for an award of a new trial.[3]

■ Howard's final specification of error is to the effect that the trial court erred in failing to grant him an evidentiary hearing concerning an allegedly im-

1. Howard first brought this subject up in his direct examination.

2. We also note that the trial court in the case at bar cautioned the jury that Howard was charged only with the crime of receiving and concealing stolen property and that evidence of other crimes "isn't important here at all."

*See* Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314, 1321 (1935), for a discussion by the Supreme Court of the United States of the role the prosecutor should play in federal prosecutions. We think the views expressed there are fully applicable to state prosecutors. This was recognized in the

adoption of the ABA Code of Professional Responsibility by Supreme Court Order 128. *See* ABA Code of Professional Responsibility, Canon 7, EC 7–13 (1969). *See generally* ABA Project on Standards for Criminal Justice, The Prosecution Function and The Defense Function, 43–134 (1970).

3. Even if we were to view the questioned remarks as unjustified in the context of the entire trial, we think any error flowing from the prosecutor's conduct was in the nature of harmless error under the standard of Love v. State, 457 P.2d 622, 631–632 (Alaska 1969).

proper statement made by the bailiff to the jury during the course of their deliberations. We find that the record furnished us does not permit intelligent review of this question. As far as we can discern, Howard's counsel never explicitly moved for an evidentiary hearing or bottomed his motion for new trial on the grounds of misconduct on the bailiff's part. Thus we find that the issue is not properly before this court and therefore decline to pass on the question.[4]

The judgment and commitment entered below is affirmed.

---

4. Howard is not precluded from raising this issue in future proceedings. Under Crim. R. 33 and 53, it is possible that Howard's allegations of the bailiff's misconduct could provide the basis for a motion for new trial. Additionally, Howard can advance this ground as a basis for post-conviction relief under Crim.R. 35(b).