Thomas Michael **ELIASON** and Michael Lane Burns, Appellants,

v.

**STATE of Alaska, Appellee.**

No. 1750.

Supreme Court of Alaska.

July 9, 1973.

Susan Burke, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellants.

Ivan Lawner, Asst. Atty. Gen., John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal raises questions concerning the adequacy of a search warrant affidavit and the sufficiency of the prosecution's evidence.

During the late evening of January 25, 1972, or early morning of January 26, 1972, George's Laundromat at 701 College Road, Fairbanks, was burglarized. Pursuant to an inventory, George Craft, the owner of the laundromat, determined that numerous items left at the establishment to be cleaned or mended were missing, including "an army blanket . . . a blue velour shirt and a red bedspread." Mary Ann Jeppsen, an employee, noticed that the blue velour shirt was missing, and further

observed that her son's "gold wool plaid jacket," which she had just completed mending, was also gone.

Based upon information tending to connect appellants Thomas Michael Eliason and Michael Lane Burns, as well as one David Alexander Gilbert, to the instant and other burglaries, the Fairbanks City Police obtained a warrant to search their apartment which was located at 707 College Road, Fairbanks, immediately adjacent to George's Laundromat. In executing the warrant, the police entered the apartment, and conducted a search. During the search a police detective seized a blue shirt from the bedroom clothes closet, and a plaid jacket, identified at the time of the search by Mary Ann Jeppsen as belonging to her son, from the back of a couch. An army blanket was also seized off the bed in the bedroom during the same search. Eliason, Burns, and Gilbert were then arrested and subsequently indicted under AS 11.20.350 [1] for the crime of concealing stolen property.

Prior to trial, Eliason, Burns, and Gilbert were unsuccessful in their efforts to suppress as evidence the army blanket, blue shirt and gold plaid jacket. At trial appellants' timely objections to the admission into evidence of the jacket, shirt and blanket were overruled. At the conclusion of the state's case, appellants moved for a judgment of acquittal on the theory that the state had failed to prove they possessed knowledge and control of the stolen property. The superior court granted the motion with respect to Gilbert, but denied the motion with respect to Eliason and Burns. Thereafter the jury returned guilty verdicts against both Eliason and Burns. This appeal followed.[2]

■ Initially, we are presented with a question concerning the adequacy of the affidavit used by the police to procure the search warrant in question, pursuant to which certain incriminating evidence was seized and introduced at trial. In particular, Eliason and Burns object to the use in the affidavit of an unsigned and unsworn to statement given to the police by one Debbie Torkelson, a 15-year-old runaway who briefly resided at appellants' residence around the time of the burglary of George's Laundromat. In a portion of her statement, Torkelson stated that she observed appellants bring into the apartment "a bunch of clothes" in plastic bags, including a "red bedspread," a brown shirt and two green suits. Appellants contend that the Torkelson statement was fatally "tainted" by evidence seized during other allegedly illegal police conduct,[3] and as such, must be excluded from the affidavit under the famous "fruits of the poisonous tree" doctrine of Wong Sun v. United

1. AS 11.20.350 provides:

A person who buys, receives, or conceals money, goods, bank notes, or other thing which may be the subject of larceny and which has been taken, embezzled, or stolen from another person, knowing it to have been taken, embezzled, or stolen, is punishable by a fine of not more than $1,000 and by imprisonment for not less than one year nor more than three years.

2. Appellant Eliason was sentenced to two years imprisonment with this period of incarceration suspended and Eliason placed on probation for two years. Burns received two years' imprisonment with one year suspended with probation.

3. The alleged illegal behavior of which Eliason and Burns complain was a warrantless search of appellants' trash bags and the seizure of certain items therefrom. In view of our conclusion regarding the independent manner in which the Torkelson statement was procured, we find it unnecessary to reach the merits of appellants' contentions concerning the constitutionality of the garbage search. Even if we were to agree with appellants that the warrantless search was unconstitutional, we would be forced to hold that the statement was obtained " 'by means sufficiently distinguishable to be purged of the primary taint' ", for we fail to discern any nexus between the trash search and the Torkelson statement. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); see also Smith v. State, 510 P.2d 793 (Alaska, 1973); Erickson v. State, 507 P.2d 508 (Alaska 1973).

States.[4] We disagree. The record fails to disclose that Torkelson was in any way identified, taken into custody, questioned, or connected to appellants as a result of the purportedly unlawful police behavior. Thus, we conclude that the Torkelson statement was acquired by Officer Strickfaden in a manner sufficiently independent of any other evidence contained in the affidavit. Nor was the statement obtained through any coercive means.[5] Rather, we are convinced that the statement was independently procured by police investigative activities and freely given by Torkelson.

Appellants also attack the sufficiency of the affidavit in the case at bar by contending that the affidavit fails to disclose that the hearsay evidence, in the form of the Torkelson statement, was provided by an informant who was credible and reliable. The state, on the other hand, argues that the district judge possessed a sufficient basis for determining that Torkelson was a reliable and credible informant since her statement was based upon personal observations and was internally consistent as well as externally corroborated by other information.

In Morris v. State,[6] and more recently in State v. Davenport,[7] we acknowledged the constitutional requirement that an affidavit containing hearsay evidence must include an explanation of some of the underlying circumstances as well as a reference to the informant's credibility and reliability. Specifically, we quoted approvingly from Aguilar v. Texas,[8]

> An affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant . . . [but] the magistrate must be informed of some of the underlying cir-

cumstances from which the officer [the affiant] concluded that the informant . . . was credible or his information reliable.[9]

The affidavit in the present case is not flawless. It omits any explicit assertion that Debbie Torkelson is a credible and reliable informant; Torkelson's statement is unsigned and unsworn to; and Torkelson's statement was apparently taken before Officer Strickfaden, while a copy thereof was later presented to the affiant, Officer Vogt. Yet, the informant was identified; the hearsay evidence provided by the informant commendably appeared before the judge in the form of a complete transcript, rather than a summary thereof by the affiant; the statement was based upon Torkelson's personal observations; and the statement was corroborated by other facts in the affidavit. More precisely, with regard to the latter point, the property described by Torkelson tended to match the descriptions of some of the stolen articles itemized in other paragraphs of the affidavits.

■ We recently had the opportunity to consider a search warrant affidavit with similar deficiencies in State v. Davenport. There we considered the sufficiency of an affidavit which failed to assert that the informant was credible or reliable, and stated:

> Since the hearsay in the instant case was based on the information of an identified informant, and that information was acquired by the informant's own observation, and furthermore, since the independent discovery of the handgun at the time of Davenport's arrest tended to corroborate Harris' story, we believe that there was a substantial basis for credit-

---

4. 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

5. Ms. Torkelson was aware of her right to remain silent and acknowledged "that I don't have to tell you [Officer Strickfaden] nothing if I don't want to."

6. 473 P.2d 603, 605 (Alaska 1970).

7. 510 P.2d 78 (Alaska, 1973).

8. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964).

9. *Id.* at 114–115, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. *See also* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

ing the hearsay. We are therefore unable to agree that Gray's affidavit failed to establish sufficient probable cause for the issuance of a search warrant.[10]

Since the informant in the case at bar was identified, had based her information on personal observations, and corroborated her story by other facts, we conclude that the affiant's failure to assert that Torkelson was reliable and credible does not render the affidavit fatally defective.

Eliason and Burns also urge that the affidavit is defective insofar as it fails to clearly set forth the sources of and circumstances surrounding the hearsay information used in the affidavit concerning the commission of several other burglaries and itemizing property which had been stolen therein.[11] Appellants argue that the state is required to specifically identify such sources and circumstances in its affidavit under Aguilar v. Texas [12] and Giordenello v. United States.[13] The state contends that it is not constitutionally required to establish probable cause for each factual allegation in the affidavit, but that the judge is to examine the affidavit as a whole in an attempt to determine the existence of probable cause.[14] The state further argues that it is unnecessary to identify the sources of the questioned information in the affidavit since such information concerned burglaries—crimes with victims —and the district judge could have reason-

ably inferred that the information "most probably came from on-the-scene police investigation or from the victims."

 In State v. Davenport, we said that an affidavit for a search warrant must be examined common-sensically, as a whole, and rejected any requirement that each assertion of fact must be traced to its ultimate source. Specifically, we stated:

We simply note that Davenport's argument that Gray's failure to name the source of his information (a) that Howard's Gun Shop had been burglarized, and (b) that a gun had been discovered at Davenport's residence following his arrest does not invalidate the warrant. It is not necessary that every assertion of fact be traced to its ultimate source. The Fourth Amendment's requirements are practical and not abstract, and affidavits 'must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. . . . Technical requirements of elaborate specificity . . . have no proper place in this area.' (Citation omitted.) [15]

In the case at bar, as in *Davenport,* we conclude that the affiant's failure to name the sources of the fact that various establishments had been burglarized as well as information concerning particular items which had been stolen does not constitute a fatal error.[16] Accordingly, we hold that

---

10. 510 P.2d 78, 83 (Alaska, 1973).

11. Appellants do not contend that the search warrant was issued pursuant to a "false affidavit": an affidavit containing untruthful statements or misrepresentations of material facts. For a discussion of that question, see State v. Davenport, 510 P.2d 78 (Alaska, 1973); *see also* "The Outwardly Sufficient Search Warrant Affidavit: What If It Is False," 19 U.S.L.A.L.Rev. 96 (1971).

12. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964).

13. 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503, 1509–1510 (1958).

14. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

15. State v. Davenport, 510 P.2d 78, n. 8 (Alaska, 1973).

16. .We find it unnecessary to reach appellants' contention that the reference to their juvenile records in the affidavit violates Rule 23 of the Alaska Rules of Children's Procedure and AS 47.10.080 (g), since they failed to object to the use of such records at trial. As we previously held in Sidney v. State, 408 P.2d 858, 862 (Alaska 1965), "we will not consider on appeal any objection which was not raised at the trial level." *See also* McBride v. State, 368 P.2d 925, 928 (Alaska 1962).

Nor do we find that the reference to appellants' alleged reputations as "petty thieves and burglars" in the affidavit, by itself, constitutes reversible error. We

the questioned affidavit, taken as a whole, was constitutionally sufficient to establish probable cause for the issuance of the search warrant.[17]

Appellants also assert as error the superior court's denial of their motion for jugment of acquittal. In support of this assertion, appellants have advanced several bases for reversal of the trial court's ruling. To begin with, they challenge the requisite elements of the crime of concealment as set forth by the trial court in its charge to the jury. Specifically, appellants urge that "AS 11.20.350 must be construed as applying only to a person other than the one who stole the property," and that the state in prosecutions for concealing stolen property should be compelled "to establish as part of its case in chief that the stolen property was in fact stolen by one other than the defendant."[18] Since the state did not establish the foregoing element in the instant case, appellants argue that the trial court erred in denying their motion for judgment of acquittal. The state contends that under at least two lines of authority,[19] it is not obliged to establish in a prosecu-

tion for concealment that the defendant was not the thief. The state further argues that under the appropriate standard of review, the trial court's denial of appellants' motion for judgment of acquittal must be affirmed. Finally, the state maintains that appellants' proposed construction of AS 11.20.350 may not be considered in this appeal since they did not object to the trial court's instruction regarding the elements of the crime of concealing stolen property.

■ We think the state's last contention is dispositive of this assertion of error. Though appellants have through their motion for judgment of acquittal properly preserved for appeal the general question of the sufficiency of the state's evidence, it does not follow that the more precise issue of the requisite elements of the crime of concealing stolen property was preserved for appeal purposes. No objection was made below to the trial court's instructions. In particular, appellants did not object to the instructions which set forth the "essential elements of the crime of concealing stolen property."[20] Criminal Rule

note, without adopting, the position of three justices of the United States Supreme Court condoning the use of reputation evidence in search warrant affidavits. United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723, 733 (1971). See also Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697, 708 (1960).

17. For a general discussion of the adequacy of affidavits used for obtaining search warrants, see Abrahams, Spinelli v. United States: Searching for Probable Cause, 30 U.Pitt.L.Rev. 735 (1969); Kipperman, Inaccurate Search Warrant Affidavits As a Ground For Suppressing Evidence, 84 Harv.L.Rev. 825 (1971); Mascolo, Impeaching the Credibility of Affidavits For Search Warrants: Piercing the Presumption of Validity, 44 Conn.B.J. 9 (1970); Testing the Factual Basis For a Search Warrant, 67 Colum.L.Rev. 1529 (1967); Evidence of Prior Credibility Not Necessary Under "Totality of Circumstances" Test, 40 Fordham L.Rev. 687 (1972); Note, 15 Buffalo L.Rev. 712 (1966); 51 Cornell L.Q. 822 (1966); Note, 34 Fordham L.Rev. 740 (1966);

Note, 21 S.C.L.Rev. 246 (1969); Note, 10 Wm. & Mary L.Rev. 1004 (1969).

18. See, e. g., People v. Daghita, 301 N.Y. 223, 93 N.E.2d 649 (1950).

19. See, e. g., People v. Colon, 28 N.Y.2d 1, 318 N.Y.S.2d 929, 267 N.E.2d 577 (1971); State v. Carlton, 233 Or. 296, 378 P.2d 557 (1963); State v. Carden, 50 Wash.2d 15, 308 P.2d 675 (1957).

20. Instruction 4 provides:
The material allegations and essential elements of the crime of concealing stolen property as charged in the Indictment are:
1. That on or about the 27th day of January, 1972, at or near Fairbanks, Alaska, David Alexander Gilbert, Thomas Michael Eliason and Michael Lane Burns did unlawfully conceal one (1) men's, light blue, Pacific Enro shirt, one (1) brown U.S. Army type blanket and one (1) men's, wool, long-sleeved, plaid jacket;
2. That at the time said defendants concealed said articles, they had been stolen from their rightful owner;

30(a), however, requires parties to specifically object to a proposed charge in order to subsequently assign such instruction as error on appeal.[21] Since no such specific objection was made below, and since we decline to interpret a motion for judgment of acquittal as a specific objection to a proposed instruction within the meaning of Criminal Rule 30(a), we conclude that appellants may not now raise under the denial of the motion for judgment of acquittal issue the question as to the requisite elements of the crime of concealment.[22]

Eliason and Burns next object to the trial court's construction of the guilty knowledge requirement for the crime of concealment in AS 11.20.350. Appellants argue that the state failed to prove that they possessed the requisite knowledge of the stolen nature of the property. They urge us to follow a line of authorities which holds that mere "naked possession" of recently stolen goods does not, by itself, give rise to an inference of guilty knowledge.[23] The state argues that we need not reach this question, "since there was other evidence . . . from which the jury could have concluded that appellants knew that the items were stolen."[24]

We decline to consider the merits of appellants' contention since they again failed at trial to object to any of the trial court's instructions which treated the guilty knowledge requirement for the crime of concealment,[25] and further failed to offer any proposed instruction encompassing

---

3. That at the time the said articles were concealed, the said defendant knew they had been stolen; and

4. That the property concealed had some intrinsic value.

21. Crim.R. 30(a) provides in relevant part:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the manner to which he objects and the grounds of his objections. Opportunity shall be given to make the objection out of the hearing of the jury by excusing the jury or hearing objections in chambers.

22. Nor do we think that the superior court's failure to give appellants' proposed instruction on the elements of the crime of concealing stolen property was an omission of such seriousness that it rises to the level of "plain error," that the final judgment was " 'substantially swayed by the error . . . .' " Love v. State, 457 P.2d 622, 631 (Alaska 1969). For if appellants had properly preserved for appeal the question of the requisite elements of the crime of concealing stolen property, we would be disinclined to adopt their construction of AS 11.20.350.

23. See, e. g., Commonwealth v. Owens, 441 Pa. 318, 271 A.2d 230 (1970); State v. Long, 243 Or. 561, 415 P.2d 171 (1966); People v. Grizzle, 381 Ill. 278, 44 N.E.2d 917 (1942); State v. Richmond, 186 Mo. 71, 84 S.W. 880 (1904). But see Caudill v. Commonwealth, 256 S.W.2d 8 (Ky.1953); see generally Annot. 68 A.L.R. 187.

24. See Howard v. State, 491 P.2d 154, 156 (Alaska 1971).

25. Instruction 4 provides in part:

The material allegations and essential elements of the crime of concealing stolen property as charged in the Indictment are:

. . . . .

3. That at the time the said articles were concealed, the said defendants knew that they had been stolen;

. . .

. . . . .

Instruction 7 provides:

You will note that the act charged in the Indictment must have been done knowingly. No one can be convicted of an act done through mistake or inadvertence. An act is done knowingly if done purposely and with an intent to do that which the law forbids.

Instruction 8 provides in part:

Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.

. . . . .

In determining the issue as to intent, the jury is entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid determination of state of mind.

the rule they now urge this court to adopt.[26] In Howard v. State, [27] the appellant properly preserved the question of the correct construction of the guilty knowledge requirement by specifying as error the trial court's refusal to give the following proposed instruction:

> The court instructs the jury that the recent possession of stolen property alone is not evidence of knowledge that the property was stolen.[28]

Here, no such instruction was proposed Appellants will not now be allowed to rely upon an interpretation of the knowledge requirement which they did not urge upon the trial court below. Thus, we conclude that their motion for judgment of acquittal, with respect to the question of guilty knowledge, was properly denied.

Finally, appellants challenge the sufficiency of the evidence adduced at trial tending to show that they possessed the stolen property. That is, they contend that the state failed to prove that they "(either individually or jointly) exercised a personal distinct and conscious ownership" over the shirt, jacket and blanket. The state argues that there was sufficient evidence from which the jury could have reasonably inferred that appellants were in possession of the stolen property.

■■ The establishment of physical or actual possession of the stolen property by the accused is not essential, but "constructive" possession or control is sufficient.[29] Here, study of the record supports the state's contention that it produced sufficient evidence from which the jury could have reasonably inferred that appellants were in possession, constructively or otherwise, of the stolen property. More specifically, the blanket was found in appellants' bedroom, the shirt in their closet, and the jacket on the back of the couch in their living room. Torkelson's testimony indicates that she observed appellants carrying a red bedspread, clothing and plastic bags into the house; articles which matched the description of some of the property stolen from George's Laundromat. Finally, Eliason and Burns testified at trial during cross-examination that they could not explain how the blanket, shirt and jacket happened to be in their apartment.[30] While the state did not specifically prove which of the appellants personally handled which of the stolen articles, it was not obliged to do so under the well-established rule of law. Under the appropriate standard of review, we are to view the evidence and inferences to be drawn therefrom "in a light most favorable to the state." [31] In so doing, we conclude that there was sufficient evidence introduced at trial on the question of the possession of the shirt, blanket and jacket, such that "fair-minded men in the exercise of reasonable judgment could differ" as to whether appellants possessed the stolen property.[32] In short, the issue was properly submitted to the jury. Thus, we hold that the motion for judgment of acquittal was properly denied by the superior court on this, as well as the other contested points previously discussed.

In view of our holdings that the affidavit sufficiently established probable cause

26. See Crim.R. 30(a), supra note 21.

27. 491 P.2d 154 (Alaska 1971).

28. Id. at 155.

29. United States v. Cousins, 427 F.2d 382, 384 (9th Cir. 1970); Feinstein v. United States, 390 F.2d 50, 54 (8th Cir.), cert. denied, 392 U.S. 943, 88 S.Ct. 2327, 20 L.Ed.2d 1405 (1968); State v. Ashby, 77 Wash.2d 33, 459 P.2d 403, 405 (1969).

30. In the instant case, we have considered appellants' failure to explain the presence of the stolen items in their apartment because appellants took the stand at trial and testified in their own behalf. Had they exercised their constitutional right to remain silent and declined to testify in their own defense, consideration of and comment upon their failure to advance an explanation would be improper.

31. Beavers v. State, 492 P.2d 88, 97–98 (Alaska 1971); DeSacia v. State, 469 P.2d 369, 371 (Alaska 1970).

32. Beavers v. State, 492 P.2d 88, 97 (Alaska 1971).

for the issuance of the search warrant and that appellants' motion for judgment of acquittal was properly denied, the judgments and commitments of the superior court are affirmed.

Affirmed.