Kaye, J.
(dissenting). I cannot agree that, factually, defendant’s several statements constituted a timely and unequivocal assertion of a right of pro se representation. Moreover, if defendant’s conviction is to be upset on this basis, then denial of his right to put in no defense requires a commensurate remedy — that any retrial go forward with no defense. I would affirm the order below, and therefore respectfully dissent from the majority’s holding both that the conviction must be overturned and that defendant must be granted a new trial at which he now can choose to be represented by counsel.
Defendant was convicted, after a jury trial, of two counts of murdering an off-duty police officer as well as other crimes. By the time of trial defendant — who had prior experience with the criminal justice system — had been represented for approximately a year and a half, through pretrial proceedings, by Legal Aid attorneys Lawrence Halfond and Peter Purvis. Indeed, Legal Aid had apparently never before been assigned to a homicide case in Queens County and the Judge felt that for policy reasons he was unable to make the assignment, but defendant indicated that he would not cooperate with any attorney other than Halfond, and the head of the Legal Aid office consented to this deviation from policy. At his arraignment January 24, 1975 defendant declared that he would not have any 18-B lawyer and, referring to Halfond, said: "Me and this man have a pretty good understanding. We’re well affiliated with each other, and he understands what’s happening, and I want him, Mr. Lawrence Halfond. He has put an awful lot of time and research in this case and helping me, and I would like him to continue.”
On the morning of January 22, 1976, counsel for both sides, *740 the court and a panel of 75 prospective jurors assembled to start the trial. Word came that defendant refused to appear. At the afternoon session, the following occurred:
"mr halfond: If your Honor pleases, after an extensive interview with my client, extending over approximately two hours, I have been authorized to read the following statement into the record. Dated, of course, today’s date, at the Queens House of Detention, at approximately 12:20 p.m., in the Counsel Room.
“ Tt is my specific and pointed direction to my counsel, Lawrence Halfond, Esq., and Peter D. Purvis, Esq., of counsel to William J. Gallagher, that they not participate in any fashion in the trial of indictment number 1430 of 1974. I have specifically instructed Mr. Halfond and Mr. Purvis not to be present at any stage of the proceeding. I have given this matter a great deal of consideration and have arrived at my conclusion, as above indicated, after my counsel fully explained that my actions might be considered as a knowledgeable and voluntary waiver of my right to be present at the trial of the indictment. I feel that my constitutional rights have been abridged and trampled upon by the Queens District Attorney’s Office and Mr. Justice Farrell, to the point where it is impossible for me to receive a fair and impartial trial as guaranteed by the Constitution of the United States and the State of New York. I am innocent of the charges, but I have already been convicted in the press. I want to make it absolutely clear that I am not a Black Muslim or a member of any Black Activist Groups, such as the BLA; but on the contrary, I am a firm believer in the Constitution of the United States and the laws of this country, but I believe that I am being railroaded here and that I am not receiving the equal protection of the laws, nor am I receiving due process of law.’ ” Counsel then asked permission to withdraw or sit mute, which the court denied, and the matter was briefly recessed. When trial commenced on February 3, defendant announced to the court that neither he nor his counsel would participate. He asked “to have them excluded as well as myself.” Defendant said he had no faith in the whole system, especially in Queens County, where everyone was under hypnosis by the District Attorney: "You formulate[d] your opinions, you passed judgment against me already. You know what you are going to do, so, therefore, all those little hypocrites that you put in the box here I have no anxiety to have them.” The court directed counsel to defend, and the voir dire proceeded. After the court *741 addressed the first panel of prospective jurors, defendant stated that he was asserting the right to represent himself. Without ruling on that request, the court asked counsel to explain to defendant that he could take counsel’s place in any part of the proceedings, but both would not be permitted to act in any one instance.
Defendant then asked permission to conduct his own defense completely, a request the Judge granted. The Judge directed counsel to let defendant proceed himself but to remain on a standby basis to guide him. Defendant, however, insisted that counsel be excluded, and that he would remain mute. The Judge at that point indicated his own understanding that, by asking to act for himself, defendant had intended to participate actively; in the circumstances, the Judge directed that, while defendant would be permitted to defend himself, if he got no answer from defendant on anything, counsel was to confer with defendant and particpate on his behalf. Through counsel defendant replied that he would simply "sit mute” in the case. When asked during voir dire to consult with defendant, counsel responded that defendant refused to exercise any sort of discretion in selecting the jury, "that he wants to sit mute in the case.” The court then ordered counsel to defend him, and jury selection as well as trial went forward in this fashion. Halfond and Purvis represented defendant throughout the trial. While protesting counsel’s participation because of the rigged system, defendant made clear that he found no fault with the two individuals; he stated that "these two men [were] qualified in every response in law.”
After voir dire (consuming nearly 1,000 transcript pages) in which 103 prospective jurors were closely questioned by the District Attorney and Halfond, both sides delivered opening statements, and the trial continued over the following weeks, with counsel representing defendant in the examination and cross-examination of witnesses. Nothing further was said of pro se representation. Since defendant contends before us that there was only one error in the conduct of the trial after the jury was impaneled — claimed insufficiency of the evidence with respect to defendant’s knowledge that the gun in his possession was stolen (see, infra, p 744, n) — there seems little point to dwelling on the course of the trial, except to note that defendant’s counsel were zealous in their representation of him, themselves calling eight witnesses (including a medical expert, a hair sample expert, a ballistics expert and a private *742 investigator), making various motions (including several mistrial motions), and submitting requests to charge. It is no accident or omission that defendant at no time registered any complaint about the quality of the representation he received.
In these circumstances, defendant was not denied his constitutional right to represent himself.
The right to defend pro se being subject to restrictions, the present predicament — as well as the unenviable position into which the trial court cast itself, of likely error whatever it did —could have been obviated, or at least ameliorated, had the court simply followed the procedures outlined in People v McIntyre (36 NY2d 10), "to promote the orderly administration of justice and to prevent subsequent attack on a verdict claiming a denial of fundamental fairness.” (Id., at p 17.) The trial court made no finding that defendant’s request was unequivocal and timely; it conducted no inquiry to determine whether defendant’s waiver of the right to counsel was knowing and intelligent. And there was no finding as to whether defendant was engaging in obstreperous conduct, or whether his conduct was calculated to undermine, upset or unreasonably delay the progress of the trial, which would have forfeited defendant’s right of self-representation. While the resolution of each of these key issues is open to significant question, and the failure to make findings is indeed regrettable, still on this record defendant’s conviction should not be overturned.
The majority of this court finds that this case falls squarely within the constitutional right of pro se representation identified in Faretta v California (422 US 806) and People v McIntyre (36 NY2d 10, supra). This conclusion, however, overlooks a factual record that, when read in its entirety, leaves one wondering exactly what defendant was seeking. Having succeeded in obtaining his choice of counsel (whose prodigious efforts were satisfactory to defendant), at the commencement of a complex murder trial defendant sent in a statement insisting upon counsel’s exclusion from the courtroom. At that time he asserted no right to make his own defense. At trial 12 days later, defendant both announced that he wished to "sit mute” and insisted that he wanted counsel "excluded as well as myself.” After the first panel of prospective jurors was addressed, defendant asserted the right to defend himself (understood by the trial court to mean that he wished to participate actively), then repeated his demand to "sit mute” *743 with counsel excluded. Indeed, it is not entirely clear from the transcript whether defendant’s demands to be excluded or sit mute were limited to jury selection, or extended throughout trial, for after jury selection he made no further reference to this subject. The transcript shows that he appeared pro se with standby counsel, yet he at no point "expressly and unambiguously renew[ed] his request that standby counsel be silenced.” (See, McKaskle v Wiggins, 465 US 168, 183.)
As McIntyre instructs: "So that convicted defendants may not pervert the system by subsequently claiming a denial of their pro se right, the pro se request must be clearly and unconditionally presented to the trial court” (36 NY2d, at p 17). Moreover, "we deem a pro se application to be timely interposed when it is asserted before the trial commences (People v. Spohn, 43 A D 2d 843). At that juncture the court may conduct a thorough inquiry thereby averting delay and confusion. Once the trial has begun the right is severely constricted and will be granted in the trial court’s discretion and only in compelling circumstances.” (Id., at p 17.) Defendant’s demands were neither unambiguous nor timely. Defendant made his first request — for exclusion of counsel from the courtroom — at the commencement of trial, when the court had a panel of 75 prospective jurors ready and had cleared its own calendar for the trial, and counsel for both sides were ready to begin. Given the circumstances, the trial court acted well within its discretion. "A system of justice must not only be just but sensible and practical. An experienced criminal defendant (this defendant had been convicted several times, including two felonies, and had permitted his attorney to represent him through the suppression hearing) should not be permitted to nullify a trial and require a new trial by the simple expedient of obstructing every effort of the court to assure to defendant his legal rights and a fair trial. There comes a point where a defendant must bear the consequences of his conduct, in a courtroom as well as out of it.” (People v Kelly, 60 AD2d 220, 224, affd on opn of Silverman, J., 44 NY2d 725).
But even assuming that defendant’s right of pro se representation has been violated, the relief awarded is unwarranted. In fashioning an appropriate remedy, "the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society” (People v Kelly, 62 NY2d 516, 520; see, People v Tindle, 61 NY2d 752, 754; People v *744 Santobello, 39 AD2d 654). Having already had one error-free,* counseled trial, defendant should not now be permitted to choose to be represented by counsel at retrial. Defendant should be granted no more than what he sought from the trial court and what we now conclude was improperly denied him: an uncounseled trial at which he is excluded from the courtroom. This would, consistent with due process (see, Santobello v New York, 404 US 257, on remand 39 AD2d 654), place defendant in the position he would have occupied had the error identified by the majority not been committed.
Judge Meyer, Simons, Alexander and Titone concur in memorandum; Judge Kaye dissents and votes to affirm in an opinion in which Chief Judge Wachtler and Judge Hancock, Jr., concur.
Order reversed, etc.

 In all, three other errors are cited by defendant, none requiring reversal of the conviction. First, in view of the pretrial publicity focused on this case, it would have been desirable to conduct voir dire of prospective jurors out of the presence of other jurors, but failure to do so did not deprive defendant of a fair trial (see, Murphy v Florida, 421 US 794; People v Genovese, 10 NY2d 478). Second, permitting the father of a policeman to serve as a juror in a case involving the death of an off-duty officer on this record did not constitute reversible error. Where a relationship does not fall within CPL 270.20 (1), whether or not to sustain a challenge for cause rests within the discretion of the trial court (see, People v Harris, 57 NY2d 335; People v Provenzano, 50 NY2d 420; cf. People v Culhane, 33 NY2d 90). Here, the court did not abuse its discretion as a matter of law in refusing to disqualify the juror. The fact that a juror has a relative in the same profession as the victim does not in and of itself constitute bias; and the juror, upon thorough inquiry by counsel for both sides, affirmed his impartiality. Finally, viewing the evidence in a light most favorable to the People, as we must, the proof was sufficient to establish defendant’s knowledge that the gun in his possession was stolen (see, People v Zorcik, 67 NY2d 670; People v Reisman, 29 NY2d 278, 285, cert denied 405 US 1041; People v Colon, 28 NY2d 1,13).