Einar A. LARSON, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 2433.

Supreme Court of Alaska.

May 25, 1977.

---

Brian C. Shortell, Public Defender, Phillip P. Weidner and Barbara J. Miracle, Asst. Public Defenders, Anchorage, for appellant.

Ivan Lawner, Asst. Dist. Atty., and Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

CONNOR, Justice.

Einar A. Larson, Jr., was indicted for the felony of stealing public records under AS 11.30.250. He was charged with being part of a scheme to "fix" traffic tickets while he was employed in District Court in Anchorage as a Deputy Clerk I.[1] He was found guilty and sentenced to one year in prison. This appeal followed.

The issues presented for our determination are:

---

1. Larson's job, which consisted in part of processing traffic tickets, included the authority to accept fines and bail. The "fixing" scheme consisted of taking some of these tickets and selling them to offenders.

(1) Whether Larson was an "officer" for purposes of AS 11.30.250;

(2) Whether the trial judge erroneously failed to instruct the jury on the meaning of the term "officer" for the purposes of AS 11.30.250; and

■ (3) Whether AS 11.30.250 is unconstitutionally vague.[2]

## I

Appellant Larson's first point on appeal is that he was not an officer within the meaning of AS 11.30.250, but rather an employee of the state. Therefore, he argues that this section was not applicable to him and that he should have only been charged with a misdemeanor under AS 11.-30.240.[3]

The relevant statutory sections provide: "Sec. 11.30.240. *Mishandling of public records.* A person who has the *legal custody* of and who wilfully destroys, secretes, or mutilates a public record, book, paper, or writing, or an attorney who wilfully destroys, secretes, or mutilates a public record, book, paper, or writing, or wrongfully takes a public record, book, paper, or writing from the person having legal custody of it, or who has obtained possession wrongfully and refuses or neglects to return or produce it when lawfully required or demanded so to do, upon conviction, is punishable by imprisonment in the penitentiary for not less than six months nor more than one year, or by imprisonment in a jail for not less than three months nor more than one year, or by a fine of not less than $100 nor more than $500.[4]

Sec. 11.30.250. *Act of officer having custody. An officer having custody of a record, map, or book, or a paper or proceeding of a court, filed or deposited in a public office,* or placed in his hands for any purpose, who is guilty of stealing, wilfully destroying, mutilating, defacing, altering or falsifying, removing or secreting the whole or a part of the record, map, book, paper, or proceeding, or who permits another person to do so is punishable by imprisonment in the penitentiary for not less than one year nor more than five years, or by a fine of not more than $5,000, or by both.

Sec. 11.30.260. *Act of person not officer. A person not an officer referred to in § 250 of this chapter, who is guilty of the acts specified in § 250 of this chapter, is punishable by imprisonment* in the penitentiary for not less than one year nor more than three years, or by a fine of not more than $2,000, or by both." (Emphasis added).

The legislature has not expressly defined the term "officer" for the purposes of AS 11.30.250 and AS 11.30.260. AS 11.30.060 and AS 11.30.070 define a "judicial officer" and an "executive officer" for purposes of the bribery statutes. *See* AS 11.30.050 and AS 11.30.040. AS 22.20.010 also defines "judicial officer." Appellant Larson argues that since AS 11.30.180 (officer not executing process whereby person escapes), AS 11.30.200 (neglect or refusal to aid officer), and AS 11.30.210 (obstructing an officer) all have title headings which use the word "officer" to refer to a peace officer, this same interpretation should apply to § 250. However, AS 11.30.200 and .220 use the

---

**2.** Larson challenges the constitutionality of AS 11.30.240 and AS 11.30.260. However, since he was not convicted of violating these sections, they are not properly before us. *Colten v. Kentucky,* 407 U.S. 104, 111 n.3, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

**3.** AS 11.75.030 provides:
"Crimes are divided into felonies and misdemeanors. A felony is a crime which is or may be punishable by imprisonment for a period exceeding one year. Every other crime is a misdemeanor."

Although Larson only received a one-year sentence, he could have been imprisoned for up to five years under § 250, and hence is a "felon." Section 240 provides for a maximum of only one year in prison, and hence is a misdemeanor as defined by AS 11.75.030. *See also* AS 11.-05.010.

**4.** In 1975, after the events at issue in this case, the Legislature amended § 240 in a manner not here relevant.

word "officer" to refer to magistrates as well as peace officers, and section 220 also includes judges. In any event, title headings are not necessarily reliable interpretive guides. *See* AS 01.05.006; *see also Gordon v. Burgess Constr. Co.*, 425 P.2d 602, 605 (Alaska 1967). *Cf.* Alaska Const. art. XII, § 10, (title headings are not to be used in interpreting the Constitution).

Since the legislature has not provided us with a definition of "officer" for the purposes of AS 11.30.250, we turn to the common law for guidance. *See* 3 J. Sutherland, Statutory Construction § 59.08 (Sands 4th ed. 1974); *cf. Harris v. State*, 457 P.2d 638, 641 (Alaska 1969) (common law consulted to ascertain meaning of "crime against nature"). The common law definition of "officer" varies from jurisdiction to jurisdiction depending on the context in which the word is used. *State v. Conway*, 219 Iowa 1155, 260 N.W. 88, 91 (1935); *State ex rel. Johnston v. Melton*, 192 Wash. 379, 73 P.2d 1334, 1336 (1937). *See generally* Annot., 140 A.L.R. 1076 (1942), and cases collected therein. There are, however, certain characteristics that an office, as opposed to mere employment, possesses. These are not iron-clad criteria and the presence or absence of one or more is indicative though not dispositive.

■ The most important characteristic of an office is that it involves a delegation to the individual of "some of the sovereign functions of government, to be exercised by him for the benefit of the public." *State v. Conway*, 219 Iowa 1155, 260 N.W. 88, 92 (1935); F. Mechem, The Law of Public Offices and Officers 5 (1890) [hereinafter cited

as Mechem]; *accord, e. g., Wharton v. Everett*, 229 A.2d 492, 494 (Del.Super.1967); *State v. Jacobson*, 140 Mont. 221, 370 P.2d 483, 485 (1962). Second, an office is created by the constitution or authorized by statute. *State v. Conway, supra*, 260 N.W. at 92; *State v. Jacobson, supra*, 370 P.2d at 485; *cf. Hull v. City of Cleveland*, 79 Ohio App. 87, 70 N.E.2d 137 (1946) (rejecting theory that relationship between public officer and municipality is contractual). *Cf. Finley v. McNair*, 317 Pa. 278, 176 A. 10 (1935) (chairman of traction conference board found not to be an officer where that position was created by contract between the city and traction company). Third, the duties of an office are prescribed by the constitution or by statute or "necessarily inhere in and pertain to the administration of the office itself." *State v. Conway, supra*, 260 N.W. at 92.[5] Fourth, an office has permanence and continuity.[6] *State v. Conway, supra*, 260 N.W. at 92; 3 McQuillin on Municipal Corporations § 12.30 at 175 (3rd ed. 1973) [hereinafter cited as McQuillin]. *See generally* Annot., 140 A.L.R. 1076, 1089–91 (1942).

Two additional characteristics usually attach to an office but are not indispensable. These are an oath of office and a salary or fees fixed by law. *State v. Conway, supra*, 260 N.W. at 92. *Accord, State v. Glenn*, 9 W.W.Harr. 584, 39 Del. 584, 4 A.2d 366, 367 (Del.Super.1939) (oath, salary and fees are incident to but not part of office). *But see State v. Jacobson, supra*, 370 P.2d at 485 (position is mere employment where oath not required).

McQuillin, *supra* at 167, suggests that in ascertaining the meaning of the term "office" courts should not be overly technical.

---

**5.** An employee is one whose duties are said to be merely contractual in nature. *Chapman v. Gerard*, 341 F.Supp. 1170, 1174 (D.V.I.1970).

**6.** Case law does not make clear exactly what this means. *See, e. g., State v. Conway, supra*, 260 N.W. at 92; *State v. Sowards*, 64 Okl.Cr. 430, 82 P.2d 324, 331 (1938); Annot., 140 A.L.R. 1076, 1089–91. Mechem, *supra* at 6–7, suggests that Chief Justice Marshall aptly described this characteristic:

"[I]f a duty be a continuing one, which is defined by rules prescribed by the government and not by contract, which an individu-

al is appointed by government to perform, who enters on the duties pertaining to his station without any contract defining them, if those duties continue though the person be changed it seems very difficult to distinguish such a charge or employment from an office or the person who performs the duties from an officer." Quoted from *United States v. Maurice*, 2 Brock. (U.S.C.C.) 96, 103 [26 F.Cas. 1211, 1214 (C.C.D.Va.1823) No. 15,-747)].

Mechem also suggests that this characteristic is not indispensable. *Id.* at 7.

Indeed, the New Jersey Supreme Court takes the position that for the purposes of criminal statutes, the common law definition of officer must be broad enough to embrace any corrupt use of a position, except for political influence:

> "The underlying basis of the various [common law] crimes of official misconduct is the breach of a duty of public concern by one who by virtue of his position—whatever it might be called—is in some way entrusted with the public welfare. So the definition of 'officer' with respect to any such crime must be so broad that no public employee can claim to be outside its circumscription so long as the alleged misconduct is at all related to his official duties and obligations, express or inherent." *State v. Begyn*, 33 N.J. 35, 167 A.2d 161, 165 (1961).[7]

Article IV, § 1 of the Alaska Constitution vests the judicial power of the state in a "supreme court, a superior court, and the courts established by the legislature." AS 22.15.010 creates the district courts and AS 22.15.100–120 defines the duties of district court judges and magistrates, who under AS 22.20.010 are considered "judicial officers." AS 22.20.035 creates the position of a deputy clerk to be designated by court order. That section permits the deputy to exercise certain powers of judicial officers[8] and "other powers authorized by law." Among these other powers are to act as in-court deputy for weekend arraignments, to collect fines and bail in minor cases according to a bail schedule, and to issue process in the name of the court. *See* AS 22.15.140. Although the duties of a deputy clerk include filing and clerical work, they also include work with an element of public trust. Thus, the position of deputy clerk does involve a delegation of some of the judicial functions of government and therefore possesses the primary characteristic of a public office.

■ Larson, however, argues that his low salary and temporary status indicate he was an employee rather than an officer.[9] The state argues that his designation as temporary is of little significance since this means merely that he served at the pleasure of the appointing authority, as do heads of principal executive departments and the administrative director of the court system. Alaska Const. art. III, § 25; Alaska Const. art. IV, § 16. Permanence and continuity mean the duties of the position are not specific to the individual filling that position, but endure irrespective of who fills it. True, the clerical and filing work would suggest that the deputy clerk is a mere employee. On the other hand, the statutorily imposed duties attaching to the position of deputy clerk would tend to indicate that this position is an office.

While Larson did sign an oath of office, this is required of all state employees and officers. AS 39.05.130. Larson was bonded, but under a blanket position bond covering all justices, judges, magistrates and employees of the Alaska Court System. Admin.R. 50.

---

7. In *Begyn* the defendant, a sanitary inspector, was convicted of bribery, a misdemeanor, for receiving money from a scavenger company to protect it against problems with its contract with the city. While the offense in the present case is a felony, not merely a misdemeanor, the same underlying policy considerations are certainly present.

8. The deputy clerk is empowered to administer oaths, certify certain written instruments and certify affidavits and depositions. AS 22.20.-030(4), (5), (6) and (7).

9. Larson argues that his position lacked the importance, dignity and independence of an office. However, where the characteristics of an office are otherwise present, it does not matter that the position lacks the stature popularly associated with public office. See McQuillin, *supra* § 12.31 at 180, for a list of various positions which have been held to be offices. The position of a deputy clerk falls within the general class of officers designated as "ministerial," *see* Mechem, *supra* at 440–445, that is, those "who execute and enforce the judgments, decrees and orders of superior courts and officers . . .," *id.* at 440, and whose duties are "performed in a prescribed manner, in obedience to the law or the mandate of legal authority, without regard to or the exercise of, the judgment of the individual. . . ." *Id.* at 442.

■ On balance, we think that Larson qualifies as an officer at common law.[10] The description of his duties and powers, including his responsibility as the custodian of the records of criminal proceedings and his power to collect money from the public, indicates a public trust was reposed in him. *See* McQuillin, *supra* at 168. While his position did not have a definite tenure and duration, *see United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 18 L.Ed. 830 (1868), this characteristic is not indispensable. *See* Mechem, *supra* at 7.

We also note that under California law, a deputy clerk for the traffic division of the municipal court is deemed an officer for the purposes of Calif.Gov't.Code § 6200, which is substantially identical to AS 11.30.250. *People v. Thompson*, 122 Cal.App.2d 567, 265 P.2d 590 (1954).[11]

■ Our conclusion is strengthened when we consider that AS 11.30.250 has as its underlying purpose the punishment of those in a position of trust who interfere with, tamper with or misappropriate public documents. *See State v. Begyn, supra.* *See generally* Cal.Gov't.Code §§ 6200–6201 (West 1966). *See also United States v. Rosner*, 352 F.Supp. 915, 919–20 (S.D.N.Y.1972), *pet'n denied*, 497 F.2d 919 (2d Cir. 1974) (construing 18 U.S.C. § 2071). Therefore, we hold that Larson was an officer under AS 11.30.250 and was properly convicted under this section.

## II

■ Larson's next point on appeal is that the trial court erred in failing to instruct the jury on the meaning of the term "officer." The state points out that Larson's attorney did not object to the proposed instructions nor did he propose an instruction defining the word "officer." Larson's attorney did move for acquittal on the ground that it was not established that Larson was an officer. However, this motion does not preserve the instruction issue for appeal. *Eliason v. State*, 511 P.2d 1066, 1071–73 (Alaska 1973). Criminal Rule 30(a) provides that for a party to assign an instruction as error on appeal, he must have made a specific objection to that instruction at trial. Since Larson failed to do so, we need not consider this point.[12] Alaska Criminal Rule 30(a); *Evans v. State*, 550 P.2d 830, 842–43 (Alaska 1976); *Eliason v. State*, 511 P.2d 1066 (Alaska 1973).

## III

Larson's final point on appeal is that AS 11.30.250 is unconstitutionally vague. We disagree.

■ In *Stock v. State*, 526 P.2d 3 (Alaska 1974), we set forth the relevant considerations in determining whether a statute is void for vagueness. The first is whether it is so broad that it may restrict the exercise

10. *Cf. Applegate v. State*, 205 Ind. 122, 185 N.E. 911, 912 (1933) (deputy county treasurer is an officer); *Oklahoma City v. Century Indemnity Company*, 178 Okl. 212, 62 P.2d 94, 97 (1936) (deputy city clerk is an officer for purposes of indemnity for criminal offenses). Where provision is made by statute for the position of a deputy, he is regarded as a public officer, especially where the appointment is permanent and an oath is required. *Id. Contra, Jeffries v. Harrington*, 11 Colo. 191, 17 P. 505 (1888). *Jeffries* is of doubtful precedential value since the issue was whether a woman could be a deputy clerk. In order to avoid excluding women who were precluded from being officers, the court decided that a deputy clerk was not an officer.

11. *People v. Thompson* is factually similar to the case at bar, although the legal issues which concerned accomplice liability under Cal.Gov't.

Code § 6200 were different. Thompson and several other defendants were charged with nine violations of § 6200 for stealing traffic citation complaints on file with the traffic division of the municipal court. *Id.*, 265 P.2d at 591. In the case at bar, Larson was charged with a violation of AS 11.30.250 for allegedly taking traffic citation (Uniform Traffic Tickets and Complaints) to the defendant drivers and, in effect, making a deal with them so that they would not have to pay the fines.

12. Larson claims he orally requested a jury instruction defining the term "officer." This misrepresents the record, since Larson was only discussing his proposed instructions with special reference to the problem of an accomplice instruction. Larson's counsel indicated he was satisfied with the instructions later given.

of first amendment rights.[13] The criminal acts with which Larson was charged do not involve the exercise of these rights, so this consideration is not pertinent. *Cf. State v. Martin*, 532 P.2d 316 (Alaska 1975) (disorderly conduct statute).

The second consideration is whether the statute gives adequate notice of the conduct that is prohibited.[14] The third consideration is whether the statute is drawn so imprecisely that it creates a danger of arbitrary enforcement. *Stock v. State, supra* at 8; *State v. Martin, supra* at 324 (concurring opinion); *see, e. g., Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

We recognize our duty to construe a statute, where it is reasonable to do so, to avoid dangers of unconstitutionality. *State v. Martin, supra; Stock v. State, supra* at 11–12; *Hoffman v. State*, 404 P.2d 644 (Alaska 1965). A statute which may be criticized because it fails to give adequate notice of every type of conduct which is prohibited may still be sustained (1) if the offense charged falls squarely within its prohibitions and (2) if a construction may be placed upon the statute so that its reach may be reasonably understood in the future. *Stock v. State, supra* at 11–12. *Cf., e. g., United States v. Harriss, supra*, 347 U.S. at 618 n.6, 74 S.Ct. 808 (U.S. Supreme Court must, if possible, construe congressional enactments to avoid constitutional infirmities).

Larson first argues that the statute fails to give notice that he falls within its prohibitions because there is no definition of the term "officer." However, we have removed any uncertainty as to its meaning by applying the common law definition. *Winters v. New York*, 333 U.S. 507, 537, 68 S.Ct. 665, 92 L.Ed. 840 (1948) (Frankfurter, J., dissenting); *Connally v. General Constr. Co.*, 269 U.S. 385, 391–92, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Therefore, the statute is not vague in this respect.

Larson further argues that when AS 11.30.250 is read in conjunction with § 240 and § 260 it becomes clear that identical behavior is prohibited. Larson contends that this gives prosecutors undue discretion, creates a potential for arbitrary enforcement, and unconstitutionally delegates legislative power to the executive and judicial branches of government. *See* Alaska Const. art. II, sec. 1.

Enforcement of criminal laws of necessity involves some degree of discretion. We believe that AS 11.30.250 can be fairly interpreted to avoid any such dangers of unconstitutionality. *Cf. Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (statute prohibiting "treating contemptuously" the flag of the United States); *Lewis v. New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) (statute containing "opprobrious" incapable

---

13. *See, e. g., Grayned v. City of Rockford*, 408 U.S. 104, 114–121, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), and *Marks v. City of Anchorage*, 500 P.2d 644 (Alaska 1972), for a discussion of overbreadth and vagueness. *See generally* Amsterdam, "The Void-for-Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.Rev. 67 (1960). Statutes which have a potential "chilling effect" on the exercise of first amendment rights must be drawn with greater specificity than those which do not. *Compare Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (loitering statute), *with Boyce Motor Lines v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (I.C.C. regulation prohibiting driving with explosives through congested areas).

14. The notice requirement embodies notions of fundamental fairness. Long ago, the United States Supreme Court said that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). *See, e. g., Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *State v. Martin*, 532 P.2d 316, 323 (Alaska 1975) (Erwin, J. and Rabinowitz, J., concurring); *Marks v. City of Anchorage*, 500 P.2d 644 (Alaska 1972). *See generally* Annot., 96 L.Ed. 374 (1952) and Annot., 16 L.Ed.2d 1231 (1967).

of being rendered constitutionally sufficient). A comparison of AS 11.30.250 and § 260 with § 240 reveals that they do cover discernibly different acts and different persons.[15] Section 240 covers legal custodians and attorneys. Section 250 includes officers who either have custody of the described documents or have them placed in their hands. Section 260 covers non-officers who commit the acts described in § 250.[16] *See People v. Thompson*, 122 Cal.App.2d 567, 265 P.2d 590, 591–92 (1954); *People v. McKenna*, 116 Cal.App.2d 207, 255 P.2d 452 (1953); 1 B. Witkin, California Crimes § 512 at 465 (1963).

AS 11.30.250 is worded broadly. It protects "a record, map, or book, or a paper or proceeding of a court, filed or deposited in a public office." The clause "filed or deposited" in a public office might be interpreted to pertain only to papers or proceedings. However, such a construction would mean that *any* record, map or book, public or private, would be protected. We think this is a strained interpretation of this language and that the clear intent of this statute is to cover records, maps or books which are filed in a public office. *Cf. Shimmel v. People*, 108 Colo. 592, 121 P.2d 491 (Colo.1942) (applying principle of *ejusdem generis* ).

The state argues, and we agree, that § 250 is intended to protect documents evidencing, affecting or establishing legal relationships. *See, e. g., People v. McKenna*, 116 Cal.App.2d 207, 255 P.2d 452 (1953) (superior court files); *People v. Tomalty*, 14 Cal.App. 224, 111 P. 513 (1910) (ledgers recording money received as bail). These are the kinds of documents that are placed in the custody of public officers.

Our conclusion is strengthened when we compare the penalties imposed under § 240 and § 250. A violation of § 240 is a misdemeanor with a maximum sentence of one year. A violation of § 250 is a felony with a maximum sentence of five years. A violation of § 260 is also a felony, but the maximum penalty is only three years. This reflects the judgment that the public harm is greater when those in a position of public trust interfere with important documents having an impact on legal relationships. Similarly, where those in whom public trust is not reposed interfere with this same class of documents, the penalty should be greater than for interference with documents which are public in the sense that they "evidence the completed acts of public servants," *People v. Olson*, 42 Cal.Rptr. 760, 765 (App. 1965), but do not affect legal relationships.

As we construe § 250, officers guilty of tampering with the enumerated kinds of documents would be subject to its penalties. An officer who is guilty of the acts described in § 240 concerning other kinds of public documents would be subject to misdemeanor penalties.

Larson falls squarely within the prohibitions of § 250, and, therefore, his conviction may be sustained.[17] As we have previously discussed, he is an officer as that term is used within § 250. The criminal acts with which he is charged consist of misappropriating traffic tickets which are clearly the kinds of documents protected by § 250. *See People v. Thompson, supra* and

---

**15.** Even if these statutes overlap in some respects this would not necessarily be fatal. *Cf. Mead v. State*, 489 P.2d 738 (Alaska 1971) (statutes punishing larceny from a building and burglary not in a dwelling held not to violate double jeopardy because of the differing social interests protected); *Sidney v. State*, 468 P.2d 960 (Alaska 1970) (sustaining statute punishing larceny in a building and general larceny statute against constitutional challenge on due process grounds).

**16.** Calif.Gov't.Code § 6201, which is the analogue to § 260, applies to private persons. 1 B. Witkin, California Crimes § 512 at 465 (1963)

and cases discussed therein. The state argues that § 260 can apply only to legal custodians, since otherwise a person who merely stood by and permitted another to do the acts described in § 250 would be subject to punishment without the requisite intent, and this would violate due process. However, since we hold that Larson was properly convicted under § 250 we do not reach this issue.

**17.** A statute which applies without question to a defendant's activities will not be held void for vagueness. *Smith v. Goguen*, 415 U.S. 566, 577–78, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

discussion at footnote 11, *supra*. He cannot complain of lack of notice concerning the criminality of his acts.

AFFIRMED.