**Katrina SUMMERS and Shellie S. Kitchen, Appellants,**

v.

**ANCHORAGE, a Municipal Corporation, Appellee.**

No. 3614.

Supreme Court of Alaska.

Jan. 26, 1979.

Lawrence W. Erwin, Mitchel J. Schapira, Edgar Paul Boyko & Associates, Anchorage, for appellants.

Allen M. Bailey, Municipal Prosecutor, and Richard W. Garnett III, Municipal Atty., Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

RABINOWITZ, Justice.

Criminal complaints were filed against Shellie Sue Kitchen and Katrina Summers in which they were charged with the commission of the offense of "assignation for prostitution," a violation of section 18.05.-050(C) of the former Anchorage Code of Ordinances and Greater Anchorage Area Borough Code.[1] The complaints, in identical language, alleged that each accused "did make an engagement with the complainant, at the [Barbary Coast and La Chateau massage parlors, respectively], to have an act of sexual intercourse; and furthermore . . did accept one hundred dollars from the complainant and remove her clothes."

After the cases were consolidated, the municipality moved to amend the complaints to charge Summers and Kitchen with violating subsection (B), rather than (C), of Ordinance 18.05.050. The district court granted the motion.[2]

Summers and Kitchen then made a motion to dismiss the complaints, arguing that: the elements of the crime are not established by the facts alleged in the complaint; the ordinance defining the charged offenses is "unconstitutionally vague"; the ordinance is "unconstitutionally overbroad"; and the ordinance is "an unconstitutional infringement of the defendants' right to privacy which does not bear a close and substantial relationship to a compelling state interest." After oral argument, the motion was denied by the district court.[3]

---

1. GAAB Ordinance 18.05.050 ("Prostitution; Acts Akin; Definitions; Evidence") provides in pertinent part:

    (A) *Definitions.* Prostitution means the giving or receiving of the body for sexual intercourse for hire. Lewdness means any indecent or obscene act. Assignment means the making of an appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement.

    (B) *Engagement of Acts.* No person shall engage in prostitution, lewdness or assignation.

    (C) *Solicitation.* No person shall solicit, induce, entice, invite, compel, force, require, or procure another to commit an act of lewdness, assignation or prostitution.

    (F) *Frequenting Place.* No person shall attend or frequent, reside in, enter or remain in any place where prostitution, lewdness, or assignation is practiced, encouraged or allowed.

    Both parties here agree that the word "assignment" in subsection (A) is a typographical error and that "assignation" is the word there defined. See Anchorage Municipal Code § 8.14.010, which properly sets out this definition of "assignation."

    Kitchen was charged with violating 18.05.-050(C) of the Anchorage Code of Ordinances and Summers with the corresponding section of the Greater Anchorage Area Borough Code. These codes have since been amended and unified into the Anchorage Municipal Code.

2. The amendment was made pursuant to Alaska Criminal Rule 7(e).

3. The district court found that the "charge in the complaint is precise and clearly advises the defendants of the essential elements of the offense, and apprises them of the nature of the charge sufficiently to allow them to prepare a defense." The court also found the ordinance "not over-broad in that, it may not be construed in a manner to restrict the constitutional rights of the defendants including the right to privacy." Neither was the ordinance found "so

Thereafter, Summers and Kitchen entered pleas of nolo contendere to the charged offense of assignation. Upon acceptance of their pleas, the district court imposed a 6-month suspended sentence on Summers, upon the condition that she commit no similar violations, and imposed a $100 fine on Kitchen, as well as a 5-day jail sentence suspended upon the same condition.

Summers and Kitchen then filed an appeal from these convictions to the superior court. On appeal they again advanced the arguments that the ordinance on which their convictions were based is unconstitutionally vague, overbroad, and an invasion of their rights of privacy.[4] In a memorandum decision, the superior court rejected these arguments and affirmed the decisions of the district court and the convictions entered against Summers and Kitchen.[5] It is from that decision of the superior court that this appeal is taken.[6]

Convictions were entered against Summers and Kitchen for assignation for prostitution, a violation of former ordinance section 18.05.050(B). That section provided:

(B) *Engagement of Acts.* No person shall engage in prostitution, lewdness or assignation.

Section (A) of 18.05.050 further defines the terms relevant to their convictions.[7] Assignation is defined as "the making of any appointment or engagement for prostitution . . . or any act in furtherance of such appointment or engagement." Prostitution "means the giving or receiving of the body for sexual intercourse for hire."

■ In *Stock v. State,*[8] we isolated three factors which must be considered when determining whether a statute is unconstitutionally vague.[9] First, a statute may not be so imprecisely drawn and overbroad that it "chills" the exercise of first amendment rights.[10] The second considera-

---

vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." The district court's findings as to the sufficiency of the complaint were sent in letter form to the Anchorage Municipal Prosecutor on October 28, 1976. The court's findings as to the overbreadth, vagueness and right to privacy issues were incorporated by reference to another letter to the prosecutor, also dated October 28, 1976. The second letter denied a similar motion in several consolidated cases which also challenged 18.05.050.

4. Summers and Kitchen included in their statement of points on appeal in the superior court and in this court an assertion that the ordinance "is sexually discriminatory and therefore any conviction thereunder is a denial of equal protection." However, they have not pursued this argument in their briefs, and we do not address it here.

5. Judge Kalamarides summarized his findings of law as follows:

After due consideration of the record on appeal and the briefs on appeal I find that the ordinance in question withstands constitutional scrutiny. I find that its terms give to a person of ordinary intelligence fair notice of what conduct is forbidden and that it is neither overbroad nor an infringement on either the appellants' or the public's right to privacy or equal protection under the law. Rather, the ordinance is a valid application of the appellee's police powers to promote the health and general welfare of the community.

6. Alaska App.R. 5 provides:

An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal . . . . .

7. *See* note 1, *supra.*

8. 526 P.2d 3, 7–9 (Alaska 1974).

9. These factors have been reiterated in numerous recent decisions. *See Jernigan v. State,* 583 P.2d 224 (Alaska 1978); *Levshakoff v. State,* 565 P.2d 504 (Alaska 1977); *Larson v. State,* 564 P.2d 365 (Alaska 1977); *Anderson v. State,* 562 P.2d 351 (Alaska 1977).

10. As we said in *Stock,*

[w]hile we are here considering overbreadth as an aspect of vagueness in that the outer contours of the statute may lack specificity, we recognize that a statute may be invalid for being overbroad although 'clear and precise' if it prohibits constitutionally protected conduct.

526 P.2d at 7. *See, e. g., Grayned v. City of Rockford,* 408 U.S. 104, 114–21, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), for a discussion of vagueness and overbreadth. Simply put, a statute which affects our highly valued first amendment rights must be precisely drawn in order to fully preserve those rights. *See, e. g., Edwards v. Louisiana,* 372 U.S. 229, 236, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Larson v. State,* 564 P.2d 365, 372 n. 13 (Alaska 1977).

tion is that in order to be consistent with notions of fundamental fairness a statute must give adequate notice of the conduct that is prohibited.[11] The final element in an analysis of statutory vagueness is whether the statute's imprecise language encourages arbitrary enforcement by allowing prosecuting authorities undue discretion to determine the scope of its prohibitions.[12]

■ The ordinance supporting the convictions of Summers and Kitchen does not threaten first amendment rights. The questioned ordinance seeks to prohibit certain sexual conduct and patterns of sexual relations. Appellants characterize these prohibitions as infringing on first amendment values of free expression and association. The expressive conduct and speech-related terms in the ordinance, however, regulate speech only as an element of prohibited prostitution activities.

The United States Supreme Court has recognized a distinction which we note as appropriate in this context.[13]

[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy * * * except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

The ordinance challenged here proscribes only expressive behavior which, under the general rubrics of "solicitation" and "assignation," is directed solely at "inciting or producing" "lawless" prostitution activities.[14] It is not flawed by overbreadth which might create a "chilling effect" on first amendment rights.[15]

■ We next consider whether Ordinance 18.05.050(B) gave Summers and Kitchen adequate notice that their conduct was prohibited. In so doing, we recognize that "[a] statute which may be criticized because it fails to give adequate notice of every type of conduct which is prohibited may still be sustained (1) if the offense charged falls squarely within its prohibitions and (2) if a construction may be placed upon the statute so that its reach may be reasonably understood in the future."[16]

---

11. This notice requirement was first fully expressed in *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

12. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Brown v. Municipality of Anchorage*, 584 P.2d 35 (Alaska 1978); *Gottschalk v. State*, 575 P.2d 289, 294–95 (Alaska 1978); *Marks v. City of Anchorage*, 500 P.2d 644, 650–53 (Alaska 1972).

13. *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969).

14. If we were to accept appellants' arguments that prostitution itself is protected by constitutional guarantees of privacy, free association, or free expression, then of course expressive behavior related to prostitution activities would be entitled to some measure of first amendment protection.

15. A similar conclusion as to the effect on first amendment rights of language in statutes regulating sexual activity has been reached by other courts. *See District of Columbia v. Garcia*, 335 A.2d 217 (D.C.App.), *cert. denied*, 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 125 (1975); *Cherry v. State*, 18 Md.App. 252, 306 A.2d 634 (Md.App. 1973). Other decisions have focused on the commercial nature of the expressive conduct related to prostitution in reaching the same result. *See Morgan v. Detroit*, 389 F.Supp. 922 (E.D.Mich.1975); *United States v. Moses*, 339 A.2d 46 (D.C.App.1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976). *See also Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977) ("But the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. . . .") *But see Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

16. *Larson v. State*, 564 P.2d 365, 372 (Alaska 1977). *See also Stock v. State*, 526 P.2d 3, 8 (Alaska 1974). "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Parker v. Levy*, 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974), *quoting, Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed.2d 944 (1945). *See also United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

Summers and Kitchen were convicted of assignation for prostitution. As defined by section 18.05.050(A), this offense includes "the making of any appointment or engagement for the giving or receiving of the body for sexual intercourse for hire or any act in furtherance of such appointment or engagement."[17] If further clarification is needed, Webster's defines "for hire" as "available for use or service in return for payment."[18]

Since both women pled nolo contendere, the criminal complaints charging Summers and Kitchen with this offense contain the only information in the record as to the conduct which formed the basis for their convictions. These complaints, as we have previously noted, alleged that each woman "did make an engagement with the complainant [Anchorage police officer] . . to have an act of sexual intercourse; and furthermore . . . did accept one hundred dollars from the complainant and remove her clothes."

■ This conduct falls squarely and clearly within the "core" of the ordinance's prohibitions. Appellants have advanced many hypothetical situations to this court in an attempt to raise the specter of citizens unknowingly engaging in behavior which might arguably be prohibited by the ordinance's terms.[19] It is sufficient to note that "even if the outermost boundaries of [the challenged statute] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much."[20] There can be no doubt that an ordinary reasonable woman in Summers' or Kitchen's position would have been aware that her conduct violated 18.05.050(B) of the former Greater Anchorage Area Borough Ordinances or Anchorage Code.[21]

The final factor which we ordinarily consider in reviewing an ordinance for vagueness is its potential for arbitrary or selective enforcement. Summers and Kitchen do not contend that enforcement or prosecuting authorities have engaged in such arbitrary or selective enforcement, nor is there evidence in this record to that effect. "[W]e will not invalidate a statute on vagueness grounds absent evidence of a history of arbitrary or capricious enforcement."[22]

17. The former ordinance's definition of prostitution is nearly identical to that in AS 11.40.-210.

18. Webster's Third New International Dictionary of the English Language 1072 (Unabridged 1961).

19. "Does one 'engage' in 'prostitution,' 'lewdness,' or 'assignation' by taking another person out to dinner with intent to have sexual activity thereafter? Do persons 'engage' in 'lewdness,' defined by the ordinance as 'any indecent or obscene act,' by thinking lustful thoughts? By making a date for some back-seat lovemaking? By writing, printing or reading sexually-oriented articles and cartoons in popular magazines? By arranging to live and sleep together out of wedlock? By engaging in or making appointments for private consensual homosexual acts? By having or making a date for adulterous sexual intercourse? By engaging in 'out of the ordinary' sexual conduct with one's spouse in the privacy of the home?"

20. Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973) (footnote and citations omitted). See also Levshakoff v. State, 565 P.2d 504, 507 (Alaska 1977) (no standing to complain of lack of adequate notice, since offense falls within the "hard core prohibitions" of the statute); Larson v. State, 564 P.2d 365, 373 n. 17 (Alaska 1977) ("A statute which applies without question to a defendant's activities will not be held void for vagueness."); Stock v. State, 526 P.2d 3, 9–12 (Alaska 1974).

21. See also People v. Superior Court of Alameda County, 19 Cal.3d 338, 138 Cal.Rptr. 66, 562 P.2d 1315 (Cal.1977) (statute prohibiting soliciting or engaging in prostitution held not so vague as to deny due process); State v. Bennett, 258 N.W.2d 895 (Minn.1977) (statute prohibiting "engaging or offering or agreeing to engage for hire in sexual intercourse" provided sufficient warning to satisfy a due process objection).

22. Levshakoff v. State, 565 P.2d 504, 507 (Alaska 1977). See also Stock v. State, 526 P.2d 3, 12 (Alaska 1974). Compare Papachristou v. City of Jacksonville, 405 U.S. 156, 169, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); Gottschalk v. State, 575 P.2d 289, 294–95 (Alaska 1978); Marks v. City of Anchorage, 500 P.2d 644 (Alaska 1972). In each of these last cases, a history of arbitrary

In conclusion, we hold that former Ordinance 18.05.050(B) is not unconstitutionally vague as applied to the conduct of Summers and Kitchen.

While we have concluded that former Ordinance 18.05.050(B) is not vague as applied to the conduct for which Summers and Kitchen were charged, they also challenge the ordinance as overbroad as applied to others because it proscribes constitutionally protected activities. The basis of their contention on this point is that the prohibition of "lewdness" in former Ordinance 18.05.-050(B) is vague and overbroad. "Lewdness" is defined in section (A) as "any indecent or obscene act."

When a statute or ordinance presents a potential for vagueness or overbreadth on its face, though not as applied in the particular case being reviewed, it is our duty to construe that statute in a way which avoids problems of constitutionality.[23] However, in the case of the former ordinances under which Summers and Kitchen were convicted, there is no need to attempt

such a construction. Those ordinances have since been amended and unified into the Anchorage Municipal Code. The present section 8.14.020 has eliminated "lewdness" as proscribed and punishable behavior.[24] Section 8.14.020 of the Anchorage Municipal Code as presently written is not vague or overbroad on its face.[25]

Summers and Kitchen also contend that the core behavior prohibited by the ordinance—prostitution and related activities—should be protected by the right of privacy guaranteed by the federal constitution and the more specific provisions of Article I, Section 22 of the Alaska Constitution.[26] The crux of this contention is that prostitution is protected within a personal autonomy right of women and men to possess and control their bodies. In the absence of a compelling state interest which outweighs these asserted individual rights, they argue that the state should not be allowed to regulate "private consensual sexual practices."[27]

enforcement encouraged by vague statutory language provided a basis for a finding of unconstitutionality.

**23.** *See* note 16 *supra.* In *Anderson v. State,* 562 P.2d 351 (Alaska 1977), we reviewed AS 11.15.134 for vagueness problems. While we agreed that the term "lewd or lascivious acts" was "imprecise," we construed the statute to proscribe only lewd or lascivious "physical contact of the child's body by the adult or by some instrumentality controlled by the adult." We held the statute viewed in its entirety and thus construed to be sufficiently definite. *See also Morgan v. City of Detroit,* 389 F.Supp. 922, 930 (E.D.Mich.1975) (severing on vagueness grounds that portion of a statute which prohibited solicitation of "lewd immoral acts"); *District of Columbia v. Garcia,* 335 A.2d 217, 222–23 (D.C.App.), *cert. denied,* 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 125 (1975) (narrowing meaning of "lewd, obscene or indecent sexual proposals" to include only "sodomy, indecent exposure or, in the case of sexual proposals addressed to children, to perform some sexual act").

**24.** Section 8.14.020 of the Anchorage Municipal Code provides:
It is unlawful for any person to engage in prostitution or assignation.
The definitions of these terms appear in Section 8.14.010.

A. 'Assignation' means the making of an appointment or engagement for prostitution or an act in furtherance of such appointment or engagement.
B. 'Prostitution' means the giving or receiving of the body for sexual conduct for hire.
C. 'Sexual conduct' means sexual intercourse, anal intercourse, masturbation or oral-genital contact.

**25.** We have recently held another prostitution-related ordinance of the Anchorage Municipal Code, section 8.14.110 ("Loitering for solicitation—Proof of known prostitute or panderer"), to be void for vagueness. *Brown v. Municipality of Anchorage,* 584 P.2d 35 (Alaska 1978). *See also People v. Gibson,* 184 Colo. 444, 521 P.2d 774 (Colo.1974) (statute punishing one who "[l]oiters for the purpose of engaging or soliciting another person to engage in . . . deviate sexual intercourse" held unconstitutionally vague).

**26.** That section of our state constitution provides:
The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

**27.** To this end, they propose a framework for analyzing the right of privacy in "sexual privacy" cases.
By reason of the right to privacy made explicit in the Alaska Constitution, all normal

In the particular factual context of this appeal, we conclude that Summers' and Kitchen's privacy arguments should be rejected. Here Summers and Kitchen entered pleas of nolo contendere to complaints which, in identical language, charged that each had made "an engagement with the complainant [at specified massage parlors] to have an act of sexual intercourse; and furthermore . . . did accept one hundred dollars from the complainant and removed her clothes." Given the commercial and public aspects of the conduct underlying their convictions, we conclude that neither Summers' nor Kitchen's constitutional rights of privacy have been infringed. More particularly, we hold that their rights of privacy under the Constitution of the United States and the Alaska Constitution do not encompass commercial sex in a public establishment.

Affirmed.

adults have a protected right to engage in private consensual sexual practices with each other, except where the government can demonstrate a legitimate and compelling public interest in preventing a particular sexual practice. In meeting this burden, it is not enough to show that the complained of act or acts are immoral or in poor taste, or that the practice is the result of a physical or psychological abnormality. . . . If the government may legitimately proscribe certain sexual practices, it must do so by a means which is least likely to infringe upon the free exercise of other protected sexual practices. In the case of a legislative enactment as such a means, the terms used therein must be clear and understandable to the average citizen and narrowly drawn by reference to specific, objectively defined physical acts, so as not to be applicable to protected acts.